**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| TAMMY L. JOHNSON and GARY A. JOHNSON, | CIVIL COMPLAINT |
| Plaintiffs, | |
| v. | CASE NO. 8:20-cv-00749 |
| WESTLAKE PORTFOLIO MANAGEMENT, LLC, | DEMAND FOR JURY TRIAL |
| Defendant. | |

## <u>COMPLAINT</u>

NOW comes TAMMY L. JOHNSON ("Mrs. Johnson") and GARY A. JOHNSON ("Mr. Johnson") (collectively, "Plaintiffs"), by and through their attorneys, Sulaiman Law Group, Ltd. ("Sulaiman"), complaining as to the conduct of WESTLAKE PORTFOLIO MANAGEMENT, LLC ("Defendant"), as follows:

### NATURE OF THE ACTION

1. Plaintiffs bring this action for damages pursuant to the Telephone Consumer Protection Act ("TCPA") under 47 U.S.C. §227 *et seq*., the Florida Consumer Collection Practices Act ("FCCPA") pursuant to Florida Statutes §559.55, Conversion, as well as for Intentional Infliction of Emotional Distress ("IIED"), Invasion of Privacy ("IOP"), and Trespass to Chattels ("TTC"), for Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the TCPA. Subject matter jurisdiction is conferred upon this Court by 47 U.S.C §227, 28 U.S.C. §§1331 and 1337, as the action arises

1

under the laws of the United States.  Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

3.  Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business in the Middle District of Florida a subtotal portion of the event that gave rise to this action occurred within the Middle District of Florida.

## PARTIES

4.  Plaintiffs are a married couple, and consumers over 18 years-of-age residing in Dade City County, Florida, which is within the Middle District of Florida.

5.  Plaintiffs are "person[s]" as defined by 47 U.S.C. §153(39).

6.  Defendant specializes in third-party servicing solutions for "finance companies, private investors, and loan holders of auto loans portfolios."[1] Defendant is a limited liability company organized under the laws of the state of California with its principal place of business located at 4751 Wilshire Boulevard, Suite 100, Los Angeles, California. Defendant regularly collects upon consumers located in the State of Florida.

7.  Defendant is a "person" as defined by 47 U.S.C. §153(39).

8.  Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

9.  Joinder of Plaintiffs' claims against Defendant is proper under Fed. R. Civ. P. 20(a)(1) as the claims arise out of the same transaction, occurrence, or series of transactions or occurrences and common questions of law or fact will arise.

---

[1] https://www.wpmservicing.com/

### FACTS SUPPORTING CAUSES OF ACTION

10. Around 2013, Mr. Johnson purchased a 2009 Jeep Wrangler ("automobile"), which was financed through Summit Financial Corporation ("Summit").

11. Subsequent to the financing of the automobile, Mrs. Johnson would remit monthly payments to Summit, pursuant to the terms of the underlying financing agreement.

12. Plaintiffs did not experience any issues with Summit, as they were current and Summit would regularly accept Mrs. Johnson's payments.

13. However, in approximately April 2019, the financing agreement with Summit was transferred to, or purchased by, Defendant.

14. Upon receiving notice that Defendant took over the financing on the automobile, Mrs. Johnson called Defendant to remit payment, as she regularly did with Summit.

15. Rather than accept Mrs. Johnson's payment, Defendant's representatives informed Mrs. Johnson that they could not speak with her, as the financing agreement was signed by Mr. Johnson.

16. Mrs. Johnson was taken aback by this information, as she never encountered any issues with Summit, the company that actually entered into the financing agreement.

17. Accordingly, Mrs. Johnson explained that she had authorization to make payment, as Mr. Johnson was often working away from home as a tugboat captain, and he did not always have the ability to remit payment.

18. Instead of working with Mrs. Johnson, Defendant ended the conversation by hanging up on Mrs. Johnson.

19. Yet, a few days later, Defendant placed a call to Mrs. Johnson's cellular phone, (813) XXX-3632, in an effort to speak with Mr. Johnson.

20. At all times relevant to the instant action, Mrs. Johnson has been the sole subscribers, owners, and operator of the cellular phone ending in -3632.  Plaintiffs are and always has been financially responsible for their cellular phones and services.

21. During this call, Mrs. Johnson reiterated that she would like to make payment on the account, but once again, rather than allowing her to do so, Defendant ended the conversation by ending the call.

22. This situation was highly frustrating to Plaintiffs, as they genuinely wanted to remit their monthly payment to Defendant.

23. Eventually, Mrs. Johnson was able to speak with one of Defendant's representatives, who finally allowed her to make payment.

24. However, in May 2019, Mrs. Johnson received another call from Defendant, who once again asked to speak with Mr. Johnson.

25. During this call, Mrs. Johnson attempted to remit payment, but was again denied the ability to do so by Defendant's representative.

26. Plaintiffs did not default on the underlying financing agreement, as they continuously made their monthly scheduled payments, however, Defendant's conduct was meant to force Plaintiffs into an involuntary default ("subject debt").

27. Accordingly, in June 2019, Defendant wrongfully repossessed the automobile.

28. Plaintiffs became severely distressed by Defendant's actions, as they abided by the terms in the underlying financing agreement and continued to remit payment, but yet, Defendant unilaterally caused Plaintiffs to enter a wrongful state of default.

29. After speaking with Defendant regarding its unlawful repossession, Defendant acknowledged its mistake.

30. Yet, Defendant's wrongful repossession caused Plaintiffs to remain without the automobile for several days, and also led to repossession fees.

31. Defendant's harassing conduct did not stop here, as despite the fact that Plaintiffs remained current on their monthly payments, Defendant's phone calls to Mrs. Johnson's cellular phone did not cease.

32. Upon answering Defendant's phone calls, Mrs. Johnson has experienced a significant pause, and has to repeatedly state "hello" before one of Defendant's representatives is connected with her.

33. Upon connecting with Defendant's representatives, Mrs. Johnson is informed that Defendant is seeking to speak with Mr. Johnson.

34. This has been highly bothersome to Mrs. Johnson, which has prompted her to inform Defendant that the -3632 phone number belongs to her, and not Mr. Johnson, and to stop calling her.

35. Defendant has blatantly ignored Mrs. Johnson's demands, calling her over 125 times after she has demanded that it stop.

36. Moreover, Defendant has placed calls at inconvenient hours of the day, which has forced Mrs. Johnson to pick up the phone and reiterate her demands.

37. During another conversation, Mrs. Johnson was falsely informed that Defendant could call her whenever it wanted, as she was subject to the contractual terms with Summit.

38. Again, only Mr. Johnson signed the underlying contract with Summit, so Mrs. Johnson was confused by Defendant's statement.

39. This statement was set forth by Defendant in order to harass Mrs. Johnson into making additional payment that was not required, and to lead her to believe that Defendant had the lawful ability to continue calling her, in defiance of her repeated demands.

40. Defendant has also placed multiple calls to Mrs. Johnson's cellular phone during the same day, often mere minutes apart.

41. Defendant uses a handful of different phone numbers when calling Mrs. Johnson's cellular phone, including but not limited to (727) 475-6066 and (844) 358-0641.

42. Upon information and belief, the above referenced phone numbers are regularly utilized by Defendant during its debt collection activities.

43. In addition, as a result of Defendant's persistent unlawful actions, Defendant has added late fees and other charges that would not have been incurred but-for Defendant's unilateral mistakes.

44. Frustrated over Defendant's conduct, Plaintiffs spoke with Sulaiman regarding their rights, resulting in expenses.

45. Plaintiffs have been unfairly and unnecessarily harassed by Defendant's actions.

46. Plaintiffs have suffered concrete harm as a result of Defendant's actions, including but not limited to, deprivation of their automobile for several days, fees related to Defendant's unlawful repossession, invasion of privacy, aggravation that accompanies excessive collection telephone calls, emotional distress, increased risk of personal injury resulting from the distraction caused by the never-ending calls, increased usage of their telephone services, loss of cellular phone capacity, diminished cellular phone functionality, decreased battery life on their cellular phone, and diminished space for data storage on their cellular phone.

## COUNT I – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### (MRS. JOHNSON AGAINST DEFENDANT)

47.  Mrs. Johnson repeats and realleges paragraphs 1 through 46 as though fully set forth herein.

48.  The TCPA, pursuant to 47 U.S.C. § 227(b)(1)(iii), prohibits calling persons on their cellular phone using an automatic telephone dialing system ("ATDS") or pre-recorded messages without their consent.  The TCPA, under 47 U.S.C. § 227(a)(1), defines an ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers."

49.  Defendant used an ATDS in connection with its communications directed towards Mrs. Johnson's cellular phone.  The significant pause, lasting several seconds in length, which Mrs. Johnson has experienced during answered calls, as well as the fact that she repeatedly has to say "hello" before she is connected with a live representative is instructive that an ATDS is being utilized to generate the phone calls.

50. Additionally, the fact that Defendant continued to relentlessly place multiple calls during the same day, often mere minutes apart, especially after it had knowledge that it was calling Mrs. Johnson, rather than Mr. Johnson, who was the signatory to the financing agreement, demonstrates Defendant's use of an ATDS.

51. Upon information and belief, Defendant uses technology that produced Mrs. Johnson's telephone number using a random or sequential number generator, as Mrs. Johnson did not sign the underlying financing agreement with Summit, and thus, never provided her phone number to Defendant. This dialing technology is used to collect upon as many consumers as possible, even though many of those consumers are current and/or never provided their phone numbers through any consent form or contract.

52. Upon information and belief, the system employed by Defendant to place phone calls to Mrs. Johnson's cellular phone has the ***capacity*** – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers.

53.   Defendant violated the TCPA by placing at least 125 phone calls to Mrs. Johnson's cellular phone using an ATDS without her consent. Mrs. Johnson was never a signatory to the underlying financing agreement with Summit.   Accordingly, Mrs. Johnson never provided Defendant with consent to contact her.  Even so, any theoretical consent that Mrs. Johnson *may* have provided Summit and/or Defendant was revoked by way of Mrs. Johnson's repeated demands that Defendant stop calling her.

54. The calls placed by Defendant to Mrs. Johnson were regarding collection activity and not for emergency purposes as defined by the TCPA under 47 U.S.C. §227(b)(1)(A)(i).

55.   Under the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B), Defendant is liable to Mrs. Johnson for at least $500.00 per call.  Moreover, Defendant's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Mrs. Johnson  is otherwise entitled to under 47 U.S.C. § 227(b)(3)(C).

WHEREFORE, Plaintiff, TAMMY L. JOHNSON, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a.  Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b.  Awarding Mrs. Johnson damages of at least $500.00 per phone call and treble damages pursuant to 47 U.S.C. §§ 227(b)(3)(B)&(C);

c.  Awarding Mrs. Johnson costs and reasonable attorney fees;

d.  Enjoining Defendant from further contacting Mrs. Johnson seeking payment of the subject debt; and

e.  Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT II – VIOLATIONS OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT

56. Plaintiffs restate and reallege paragraphs 1 through 46 as though fully set forth herein.

57. Plaintiffs are "consumer[s]" as defined by Florida Statutes §559.55(8).

58. Defendant is a "debt collector" as defined by Florida Statutes §559.55(7).

59. The subject debt is a "consumer debt" as defined under Florida Statute § 559.55(6).

### a.   Violations of FCCPA § 559.72(7)

60. A person violates section 559.72(7) of the FCCPA when it willfully communicates with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

61. Defendant violated section 559.72(7) of the FCCPA when it placed repeated harassing telephone calls to Mrs. Johnson, in an effort to reach Mr. Johnson, after Mrs. Johnson demanded that it stop calling her. Instead of abiding by Mrs. Johnson's repeated wishes, Defendant placed no less than 125 calls to her cellular phone.  Defendant's persistent behavior was done knowingly, as it had knowledge that it was calling the wrong person and that Mrs. Johnson did not wish to receive further calls.  This conduct was done in an effort to harass Plaintiffs into submission.

### b.   Violations of FCCPA § 559.72(9)

62. A person violates section 559.72(9) of the FCCPA when it claims, attempts, or threatens to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

63. Defendant violated section 559.72(9) of the FCCPA through its wrongful repossession of the automobile.  Plaintiffs repeatedly made efforts to remit payment to Defendant, but they were consistently rejected without lawful basis.  Defendant then doubled-down on its unlawful conduct

9

by repossessing the automobile in spite of Plaintiffs' current status on the underlying account. This prevented Plaintiffs from accessing their automobile for several days, and also made them incur repossession fees.

64. Defendant further violated section 559.72(9) of the FCCPA when it falsely asserted that it had the right to continue its onslaught of phone calls to Mrs. Johnson's cellular phone because she was a signatory to the underlying agreement with Summit, when in fact, only Mr. Johnson signed that agreement. Defendant's actions only served to worry and confuse Plaintiffs.

WHEREFORE, Plaintiffs, TAMMY L. JOHNSON and GARY A. JOHNSON, respectfully request that this Honorable Court enter judgment in their favor as follows:

a.  Enter judgment in Plaintiffs' favor and against Defendant;

b.  Award Plaintiffs their actual damages in an amount to be determined at trial pursuant to the Florida Consumer Collection Practices Act, Fla. Stat. §559.77;

c.  Award Plaintiffs statutory damages of $1,000.00 pursuant to the Florida Consumer Collection Practices Act, Fla. Stat. §559.77;

d.  Award Plaintiffs equitable relief, including enjoining Defendant from further violations, pursuant to Florida Consumer Collection Practices Act, Fla. Stat. §559.77(2);

e.  Award Plaintiffs costs and reasonable attorneys' fees pursuant to the Florida Consumer Collection Practices Act, Fla. Stat. §559.77;

f.  Enjoining Defendant from further contacting Plaintiffs seeking payment of the subject debt and/or reminders for payment; and

g.  Award any other relief this Honorable Court deems equitable and just.

## COUNT III – CONVERSION

65. Plaintiffs restate and reallege paragraphs 1 through 46 as though fully set forth herein.

66. Conversion is an "'act of dominion wrongfully asserted over another's property inconsistent with his ownership therein.'" *Warshall v. Price*, 629 So. 2d 903, 904 (Fla. 4th DCA 1993) (citation omitted). Thus, to state a claim for conversion, one must allege facts sufficient to

show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property." *Edwards v. Landsman*, 51 So. 3d 1208, 1213 (Fla. Dist. Ct. App. 2011).

67. Throughout the first six or so years that Plaintiffs were dealing with Summit, the original signatory to the underlying financing agreement (along with Mr. Johnson), Plaintiffs never had an issue with payment, as Mrs. Johnson systematically remitted monthly payments to Summit, who readily accepted the same. Accordingly, Plaintiffs were always current on their payments and thus, had clear title and thus a right to ownership and possession of the automobile. However, Defendant eventually took over the financing from Summit, and wrongfully refused Plaintiffs' payment, resulting in the subject debt. Defendant, in turn, acted inconsistent with Plaintiffs' ownership and right to possess the automobile through its repossession of the automobile.

68. Defendant willfully interfered with Plaintiffs use of their automobile through its wrongful repossession. Defendant's intentional and deceitful act, in spite of its knowledge that Plaintiffs were current on the underlying agreement, caused substantial damages to Plaintiffs, including but not limited to: the inability to use their automobile for several days, fees associated with Defendant's repossession, emotional distress, and invasion of privacy.

WHEREFORE, Plaintiffs, TAMMY L. JOHNSON and GARY A. JOHNSON, respectfully request that this Honorable Court enter judgment in their favor as follows:

a. Declaring that the practices complained of herein are unlawful and constitute Conversion under Florida law;

b. Awarding Plaintiffs actual damages in connection with Defendant's unlawful Conversion;

c. Award Plaintiffs punitive damages in connection with Defendant's unlawful Conversion;

d. Award Plaintiffs reasonable attorney's fees and costs;

e. Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

69. Plaintiffs restate and reallege paragraphs 1 through 46 as though fully set forth herein.

70. "To state a claim for intentional infliction of emotional distress, a plaintiff must show: (1) The wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community; (3) the conduct caused emotion distress; and (4) the emotional distress was severe." *Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 955 (Fla. Dist. Ct. App. 2017).

71. Defendant intentionally engaged in extreme and outrageous conduct when it knew that Plaintiffs were current on their monthly payments, but yet, tried to force Plaintiffs into default by inexplicably rejecting their payment. This conduct led to Defendant's wrongful repossession.

72. Defendant's reckless conduct did not stop here, as it placed over 125 phone calls to Mrs. Johnson's cellular phone not only after she notified it that the phone number did not belong to Mr. Johnson, but after she also demanded that it stop calling her entirely. Mrs. Johnson reiterated these demands, but her wishes fell on deaf ears, as Defendant's systematic ATDS continued placing calls to Mrs. Johnson's cellular phone.

73. Defendant knew that its relentless phone calls, especially in light of its wrongful repossession, would inflict severe emotional distress on Plaintiffs and Plaintiffs' general well-being.

74. Defendant's actions were designed to instill fear and emotional distress upon Plaintiffs, and its reckless conduct *did* cause Plaintiffs severe emotional distress, as their automobile was taken away from them and they were being bombarded with telephone calls without reason.

75. Defendant's conduct goes beyond all bounds of decency, as repossessing an automobile without valid reason, and concurrently placing hundreds of phone calls to collect upon a current account is utterly intolerable in today's society.

WHEREFORE, Plaintiffs, TAMMY L. JOHNSON and GARY A. JOHNSON, respectfully request that this Honorable Court enter judgment in their favor as follows:

a.  Declaring that the practices complained of herein are unlawful and constitute Intention Infliction of Emotional Distress under Florida law;

b.  Awarding Plaintiffs actual damages in an amount to be determined at trial, in connection with Defendant's extreme conduct;

c.  Awarding Plaintiffs punitive damages in an amount to be determined at trial, as a result of Defendant's extreme conduct; and

d.  Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT V-INVASION OF PRIVACY-INTRUSION UPON SECLUSION

76. Plaintiffs restate and reallege paragraphs 1 through 46 as though fully set forth herein.

77. Defendant intentionally invaded Plaintiffs' privacy through its barrage of hundreds of unwanted autodialed phone calls to Mrs. Johnson's cellular phone.  This conduct, in conjunction with Defendant's calls at different times throughout the day, was highly intrusive and invasive to Plaintiffs, and thus, eliminated Plaintiffs' right to privacy.

78. Defendant's unsolicited phone harassment campaign severely disrupted Plaintiffs' privacy, disrupted their overall focus, and continually frustrated and annoyed Plaintiffs to the point where they were denied the ability to quietly enjoy their life, instead having it upended by Defendant's harassing phone call campaign.

79. These persistent collection calls eliminated the peace and solitude that Plaintiffs would have otherwise had in their home and/or any other location in which they would have normally brought their cellular phone.

80. Defendant further intentionally invaded Plaintiffs' privacy by seizing their automobile, leaving them in a constant state of apprehension, believing that their automobile can be taken away at any moment and without reason.

81. By continuing to call Plaintiffs in an attempt to dragoon them into payment, Plaintiffs have no reasonable escape from these incessant calls and conduct.

WHEREFORE, Plaintiffs, TAMMY L. JOHNSON and GARY A. JOHNSON, respectfully requests that this Honorable Court enter judgment in their favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiffs actual damages;

c. Award Plaintiffs punitive damages;

d. Award Plaintiffs  reasonable attorney's fees and costs;

e. Enjoining Defendant from contacting Plaintiffs; and

f. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT VI-TRESPASS TO CHATTELS

82. Plaintiffs restates and realleges paragraphs 1 through 46 as though fully set forth herein.

83. Trespass to Chattels is defined as the intentional interference with the possession, or physical condition of a chattel in the possession of another, without justification. Prosser, Torts, 64 (2d ed.).

84.  "The harm recognized by the ancient common law claim of trespass to chattels — the intentional dispossession of chattel, or the use of or interference with a chattel that is in the possession of another, is a close analog for a TCPA violation." *Mey v. Got Warranty, Inc*., 193 F.Supp.3d 641, 647 (N.D. W. Va. 2016).

85. Courts have applied this tort theory to unwanted telephone calls and text messages. *See Czech v. Wall St. on Demand*, 674 F.Supp.2d 1102, 1122 (D.Minn. 2009) and *Amos Financial, L.L.C. v. H&B&T Corp.*, 48 Misc.3d 1205(A), 2015 WL 3953325, at *8 (N.Y.Sup. Ct. June 29, 2015).

86. "Even if the consumer does not answer the call or hear the ring tone, the mere invasion of the consumer's electronic device can be considered a trespass to chattels, just as "plac[ing a] foot on another's property" is trespass." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1551 (2016) (Thomas, J., concurring).

87. Defendant interfered with Plaintiffs' ability to use Mrs. Johnson's cellular phone while it was in their possession. Defendant knew or should have known that its phone calls were not consented to, as Mrs. Johnson repeatedly informed it that the phone number it was contacting did not belong to Mr. Johnson and to stop calling her.

88. Aside from Defendant's interference with Mrs. Johnson's cellular phone, Defendant further intentionally interfered with Plaintiffs' use of the automobile, as Defendant wrongfully repossessed it in spite of the current status on the underlying account.

89. Defendant caused damage to Plaintiffs, including, but not limited to, stress, anxiety, and emotional distress, as well as the inability to use their automobile for several days, and fees associated with Defendant's wrongful repossession.

90. Mrs. Johnson also suffered damages in the form of the wear and tear caused to her cellular telephone, the loss of battery charge, and the loss of battery life.

WHEREFORE, Plaintiffs, TAMMY L. JOHNSON and GARY A. JOHNSON, respectfully request that this Honorable Court enter judgment in their favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b.  Awarding Plaintiffs actual damages;

c.  Award Plaintiffs punitive damages;

d.  Award Plaintiffs  reasonable attorney's fees and costs;

e.  Enjoining Defendant from contacting Plaintiffs; and

f.  Awarding any other relief as this Honorable Court deems just and appropriate.


Dated: March 31, 2020                              Respectfully Submitted,

                                                  */s/ Alejandro E. Figueroa*
                                                  Alejandro E. Figueroa, Esq.
                                                  Florida Bar No.: 1021163
                                                  *Counsel for Plaintiff*
                                                  Sulaiman Law Group, Ltd
                                                  2500 S Highland Ave, Suite 200
                                                  Lombard, IL 60148
                                                  Telephone: (630) 575-8181 Ext. 120
                                                  alejandrof@sulaimanlaw.com